**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

**No. 26-5768**

---

**LAQUINDOLYN LOU EVANS, AKA LOU EVANS**
Plaintiff-Appellant,

V.

**SIMMONS BANK,**
Defendant-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION
HONORABLE BRIAN C. LEA

(Case No. 2:24-cv-02912-BCL-TMP)

---

# BRIEF OF PLAINTIFF-APPELLANT LAQUINDOLYN "LOU" EVANS

---

Alan G. Crone
BARRETT & FARAHANY
88 Union Avenue, 4th Floor
Memphis, Tennessee 38103
(901) 737-7740
acrone@justiceatwork.com

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Plaintiff-Appellant certify that Plaintiff-Appellant Laquindolyn "Lou" Evans is an individual; no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

# TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................1

STATEMENT OF JURISDICTION.......................................................................2

STATEMENT OF THE ISSUES.........................................................................3

STATEMENT OF THE CASE.........................................................................4

I. Evans's employment and qualifications................................................4

II. Simmons imposed a higher standard on black employees due to their race ..........................................................................5

III. Simmons treated Evans differently than her white team members .........................................................................................6

IV. Simmons's stated reason and the disputed performance record.............................................................................................7

V. Procedural history............................................................................9

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT ..........................................................................................14

I. Standard of review.........................................................................14

II. Atextual Tests Cannot Supersede the Summary Judgment Standard.........................................................................................16

III. The District Court Erred in Granting Summary Judgment Despite Holding that a Reasonable Jury Could Find that Simmons Applied a Race-Based Performance Standard to Evans ....................19

IV. The District Court Erred by Holding that Evans Failed to Establish through Circumstantial Evidence that Simmons Discriminated Against Her on the Basis of Her Race....................24

A. Evans Identified Comparators Who Were Similarly Situated in All Relevant Aspects ....................24

B. Evans Demonstrated that Simmons's Articulated Reason Was Pretext ....................28

CONCLUSION....................31

CERTIFICATE OF COMPLIANCE....................32

CERTIFICATE OF SERVICE ....................33

ADDENDUM DESIGNATION ....................34

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994)........................................................16

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) ................................16, 24

*Amini v. Oberlin Coll.*, 440 F.3d 350 (6th Cir. 2006).................................20, 22, 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................15, 22

*Anwar v. Dow Chem. Co.*, 876 F.3d 841 (6th Cir. 2017) .......................................15

*Ayodeji Awe v. Harris Health Sys.*, 163 F.4th 969 (5th Cir. 2026) .........................17

*Bledsoe v. TVA Bd. of Dirs.*, 42 F.4th 568 (6th Cir. 2022)...............................20, 22

*Burley v. Gagacki*, 729 F.3d 610 (6th Cir. 2013) ...................................................15

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020)..........................................................................................20

*DePas v. Stocker & Yale, Inc.*, 94 F. App'x 335 (6th Cir. 2004)............................15

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) ....................................................14

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998) ............................................................................26

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978)..........................................16

*Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016) .......................18

*Hittle v. City of Stockton*, 145 S. Ct. 759 (2025) ...................................................17

*Hollis v. Morgan State Univ.*, 153 F.4th 369 (4th Cir. 2025).................................17

*Ismael v. Roundtree*, 161 F.4th 752 (11th Cir. 2025)............................................17

*Jackson v. FedEx Corp. Servs.*, 518 F.3d 388 (6th Cir. 2008) ....................25, 26, 27

*Jenkins v. Nell*, 26 F.4th 1243 (11th Cir. 2022) ....................................................18

*Kocak v. Cmty. Health Partners of Ohio, Inc.*,
400 F.3d 466 (6th Cir. 2005) ..........................................................10, 21, 23

*Massey v. Borough of Bergenfield*, 169 F.4th 188 (3d Cir. 2026) ..........................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............15

*McCreight v. AuburnBank*, 117 F.4th 1322 (11th Cir. 2022) .................................17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..............................11, 24

*McMillan v. Castro*, 405 F.3d 405 (6th Cir. 2005) ................................................25

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ...............................................16

*Norbuta v. Loctite Corp.*, 1 F. App'x 305 (6th Cir. 2001) ......................................10

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012) ..............15

*Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642 (6th Cir. 2012).......19, 20, 23

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) ...................................18

*Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998) ..........................................29

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) .........................18

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ...............................................16

*Talley v. Bravo Pitino Rest.*, 61 F.3d 1241 (6th Cir. 1995) ..............................21, 24

*Tennial v. UPS*, 840 F.3d 292 (6th Cir. 2016) .......................................................25

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) .................................25

*Yazdian v. ConMed Endoscopic Techs., Inc.*,
793 F.3d 634 (6th Cir. 2015) .......... 29

**Statutes**

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 2

28 U.S.C. § 1367 .......... 2

42 U.S.C. § 1981 .......... 2, 9, 20

42 U.S.C. § 2000e *et seq.* .......... 2, 9, 12, 16, 20

Tenn. Code Ann. § 4-21-101 .......... 2, 9, 20

**Rules**

Fed. R. App. P. 32 .......... 32

Fed. R. App. P. 34(a) .......... 1

Fed. R. Civ. P. 56 .......... 11, 12, 15, 17, 19

6th Cir. R. 34(a) .......... 1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 34(a), Plaintiff-Appellant respectfully requests oral argument. This appeal presents important issues concerning the proper application of the summary judgment standard in an employment discrimination case where the decisionmaker directly acknowledged that black employees are held to a different standard than white employees, yet the district court nevertheless removed the case from the jury. Oral argument would assist the Court in evaluating the record, the competing inferences, and the relationship between the ordinary summary judgment standard and this Court's direct- and circumstantial-evidence frameworks.

## STATEMENT OF JURISDICTION

The district court had federal-question jurisdiction pursuant to pursuant to 28 U.S.C. § 1331 over Plaintiff-Appellant's Title VII and Section 1981 claims, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over her related claims under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101.

Because this is an appeal from a final decision of the United States District Court for the Western District of Tennessee issued on August 3, 2026, this Court has appellate jurisdiction under 28 U.S.C. § 1291. The notice of appeal was timely filed on August 31, 2026.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting summary judgment after finding that, although a reasonable jury could find in favor of Evans based on the decisionmaker's statements that black employees were held to a higher standard than white employees, this evidence was not direct evidence under this Circuit's precedent.

2. Whether the district court erred in holding that Evans failed to identify similarly situated comparators where the comparators shared the same supervisor and the same business-banker team because Evans had a more senior position, despite the fact that the supervisor/decisionmaker acknowledged that differential treatment was due to race rather than role.

3. Whether the district court erred in failing to credit record evidence from which a reasonable jury could find that Simmons Bank's stated performance rationale lacked a factual basis, did not actually motivate the termination, and was insufficient to warrant termination.

# STATEMENT OF THE CASE

## I. Evans's employment and qualifications

Plaintiff-Appellant Laquindolyn "Lou" Evans ("Evans") is a black woman with prior banking experience as a branch manager at Regions Bank, a loan officer at Southern Bancorp, and a senior relationship manager vice president at FirstBank. (Evans Resume, R. 28-3 at Page ID # 493). She holds a bachelor's degree, a Master of Business Administration in Business Data & Analytics, and a Commercial Lending Academy Certificate. (*Id.*). As a Senior Relationship Manager Vice President at FirstBank from 2022 to 2023, she won the Chairman Club award twice and the President Club award three times. (*Id.*).

Evans was aggressively recruited by Dion Grey and Tiffany Cook, employees of Defendant-Appellee Simmons Bank ("Simmons"). (Evans Deposition, R. 26-9 at Page ID ## 247-248). Grey, who is a black man, had formerly worked with Evans at Regions Bank as her District Manager. (Grey Deposition, R. 26-4 at Page ID ## 126, 151). After accepting Simmons's offer of a Business Banker III position, Evans was convinced to begin work early, before her two-week notice period at her prior employer ended, which resulted in her forgoing a $20,000 bonus. (Evans Dep., R. 26-9 at Page ID # 247; Evans Declaration, R. 30 at Page ID # 515). Three months later, Simmons terminated Evans due to enforcement of more stringent standards imposed on black employees because of their race.

Simmons's business-banker structure included Business Banker I, Business Banker II, Business Banker III, and Senior Business Banker roles; Business Banker I employees have 2-3 years of experience as a credit analyst and 2-3 years as a portfolio manager; Business Banker III employees have 3-5 years of experience as a banker. (Declaration of Chuck Newell, R. 26-2 at Page ID ## 114-115). Employees in the latter role received higher compensation because Simmons viewed them as having greater independence and higher expectations. (*Id.*).

As a Business Banker III, Evans was assigned a $30 million book of business. (Defendant's Interrogatory Responses, R. 26-36 at Page ID # 378). Evans reported to Grey, as did two white male coworkers, Peyton McArthur and Cal Overman, both of whom were in Business Banker I roles. (Newell Decl., R. 26-2 at Page ID ## 113-114; Evans Decl., R. 30 at Page ID # 516; Evans Dep., R. 26-4 at Page ID # 151). Grey's supervisor was Brandon Cooper, the Metro Division President, who is white. (Newell Decl., R. 26-2 at Page ID # 113). Evans was the only black female banker in the entire Memphis office. (Evans Dep., R. 26-9 at Page ID # 229).

**II. Simmons imposed a higher standard on black employees due to their race**

Grey admitted in his testimony that he told Evans that "sometimes, whether fair or not, we are held to a different standard." By "we," Grey meant himself, a black man, and Evans, a black woman. (Grey Dep., R. 26-4 at Page ID # 151). He

constantly reminded Evans that she had to be "perfect on everything" because she was the only black female in a similar role. (Evans Dep., R. 26-9 at Page ID # 229).

**III. Simmons treated Evans differently than her white team members**

Evans, the only black woman in such a high-profile role at Simmons Bank, began experiencing differential treatment based on her race immediately upon starting work. Her white male colleagues, Overman and McArthur, were treated more favorably despite holding lower-level Business Banker I positions compared to Evans's Business Banker III role. First, both Overman and McArthur received more timely computer system access and training. McArthur, who started at the same time as Evans, received immediate access to Loan Vantage because he was an internal hire, and Overman received virtual Loan Vantage training within his first month. (Overman Dep., R. 26-5 at Page ID # 165; McArthur Dep., R. 26-6 at Page ID # 182). In contrast, Evans did not receive access instructions until September 25, 2023—over a month after her hire date. (Email Exchange, R. 26-13 at Page ID # 279). Due to the delay in receiving her Loan Vantage account, loans Evans originated were placed under Overman's account instead. (Evans Decl., R. 30 at Page ID # 516). She also was denied a key and badge, which hampered her access to Simmons's offices. (Evans Dep., R. 26-9 at Page ID # 227). These delays significantly hampered Evans's ability to independently perform essential job functions. (*Id.*).

Next, Evans was held to different lending standards than white bankers. Grey refused to approve loan opportunities Evans brought to him, labeling them "undesirable" businesses, while white commercial bankers had deals approved with the same companies. (Evans Decl., R. 30 at Page ID ## 516-517; Grey Dep., R. 26-4 at Page ID # 139). Furthermore, a $2 million dollar account that had a 10-year relationship with Evans and specifically requested her was instead assigned to a white banker. Another legacy customer with an account of $500,000 was also assigned to a white banker, Overman. Additionally, Evans originated a $75,000 loan that was credited to another employee. (Evans Decl., R. 30 at Page ID # 516).

**IV. Simmons's stated reason and the disputed performance record**

Despite being hampered by Simmons's differential treatment of her, Evans still performed well, generating a substantial loan pipeline and receiving public recognition at a Small Business Forum. (Cook Dep., R. 26-7 at Page ID # 199; Evans Decl., R. 30 at Page ID ## 517-518). While Grey had not communicated any specific goals or expectations to Evans, Grey admitted Evans was aggressive in finding clients—her loan production was satisfactory and played no part in her termination. (Grey Dep., R. 26-4 at Page ID ## 137, 140, 147). He further testified that no particular event caused the termination and that her 90-day review was his "lightbulb moment." The 90-day review itself was differential treatment—Grey never

performed a 90-day review on any other employee before Evans. (Grey Dep., R. 26-4 at Page ID # 154).

Grey terminated Evans on December 1, 2023, approximately three months after she began working for Simmons. (Gray Dep., R. 26-4 at Page ID # 147). Simmons contends that Evans's performance justified termination. Grey criticized Evans's communication skills and knowledge. (Gray Dep., R. 26-4 at Page ID # 131). Evans's education and experience alone contradicts this explanation. (Evans Resume, R. 28-3 at Page ID # 493). Additionally, Grey was unable to produce any concrete examples of Evans's alleged deficiencies other than minor typographical errors in internal emails and memoranda. (Gray Dep., R. 26-4 at Page ID # 131; Emails, R. 26-21 at Page ID ## 309-311; R. 26-22 at Page ID # 314). Furthermore, drafting memoranda is not listed as an essential duty in Simmons's official job description for Business Banker III. (Job Description, R. 29 at Page ID # 512). In addition, this criticism was contradicted by the testimony of Evans's coworkers, who saw no issues and received no complaints regarding her communication style or knowledge. (Cook Dep., R. 26-7 at Page ID # 199; Overman Dep., R. 26-5 at Page ID # 170). Likewise, Evans received public recognition at the Small Business Forum. (Evans Decl., R. 30 at Page ID # 518). Her coworkers said that her performance was "fine," "She did a good job," "She gave a great presentation," and she was complimented by management. (Overman Dep., R. 26-5 at Page ID # 169;

Cook Dep., R. 26-7 at Page ID # 199). Moreover, Evans was never told her job was in jeopardy, never placed on a performance improvement plan, never given any formal discipline, and never even received informal coaching prior to her termination. (Evans Dep., R. 26-9 at Page ID # 238).

Simmons thus subjected Evans to differential treatment based on her race. Because she is black, Evans was held to a much higher standard, expected by her direct supervisor to be "perfect" in everything she did. When Grey deemed that she did not meet his unrealistic standards for black employees during the 90-day evaluation he only used for Evans and not white employees, he terminated her with no warning.

**V. Procedural history**

Evans filed suit, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Section 1981 of the Civil Rights Act of 1866; and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101. (Complaint, R. 1 at Page ID # 1). After the completion of discovery, Simmons moved for summary judgment, claiming that Evans was terminated because she lacked the skills necessary for her position. (Motion for Summary Judgment, R. 26 at Page ID # 98). The district court granted summary judgment in favor of Simmons, despite finding that Evans had produced evidence sufficient for a jury to find she was discriminated against due to her race. (Order, R. 35 at Page ID # 551).

First, the court examined Grey's statements and whether they constitute direct evidence of race discrimination. The court found that these statements can be viewed "as a straightforward assertion that Grey or Defendant held black employees to a higher standard than employees of other races—in other words, racial discrimination." (Order, R. 35 at Page ID # 551). The court noted that, under the summary judgment standard, the statement should be viewed in the light most favorable to Evans; thus, summary judgment should be denied, leaving it up to the jury to determine. (*Id.*).

Nevertheless, the court continued: "But not so in the employment discrimination context." (Order, R. 35 at Page ID # 551). The court held that Sixth Circuit case law concerning direct evidence prevents that result because statements with more than one plausible interpretation are not direct evidence. (*Id.* (citing *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005) and *Norbuta v. Loctite Corp.*, 1 Fed. Appx. 305, 313 (6th Cir. 2001)). Next, the court held that, viewing the statements in the light most favorable to Evans, they also constitute evidence of a "facially discriminatory employment policy." (*Id.*). But the court again found that this Circuit's case law on direct evidence prevented such a finding. The district court held that Sixth Circuit precedent precluded treating the statements as direct evidence because they admitted more than one plausible

interpretation and required an inference connecting them to the termination. (Order, R. 35 at Page ID # 552).

The district court then considered whether Evans had established circumstantial evidence of discrimination under the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). (Order, R. 35 at Page ID # 552). The court held that Evans failed to establish a prima facie case because she did not produce comparators, finding that McArthur and Overman were not similarly situated due to differences in title, rank, experience, expectations, and compensation. (Order, R. 35 at Page ID # 553). The court reasoned that "[a]n employer may expect more of a more experienced, senior employee with a different rank and to whom more remuneration is given, resulting in different treatment based on those higher expectations." (*Id.*). The court thus granted the motion for summary judgment and entered judgment for Simmons. (Order, R. 35 at Page ID # 554).

## SUMMARY OF THE ARGUMENT

The district court found that a reasonable jury could view the decisionmaker's own words as a plain admission that Simmons Bank held black employees to a higher standard than employees of other races. Under Rule 56 of the Federal Rules of Civil Procedure, that finding should have ended the inquiry and sent the case to trial. Instead, the court concluded that judge-made evidentiary frameworks required

it to set aside the ordinary summary judgment standard and resolve competing interpretations of the evidence in Simmons's favor. That was error.

The Supreme Court has repeatedly warned against rigid, atextual tests in employment discrimination cases. It has cautioned that the prima facie case was never meant to be mechanical, and it has rejected judge-made requirements that Title VII's text does not support. Courts across the country, including this one, have recognized that the governing question at summary judgment is a simple one. Considering all the evidence, direct and circumstantial, could a reasonable jury find that race motivated the adverse action? The direct-evidence doctrine and the *McDonnell Douglas* framework are tools for answering that question. They cannot replace Rule 56's command that the nonmovant's evidence be believed and every reasonable inference drawn in her favor.

Applied correctly, the summary judgment standard requires reversal. Dion Grey, Evans's supervisor and the person who fired her, admitted telling her that black employees are held to a different standard. Evans testified that Grey repeatedly reminded her that, as the only black woman in her role, she had to be "perfect." These statements are direct evidence of discrimination. The district court treated them as possibly describing a double standard that neither Grey nor Simmons shared. That reading is not supported by anything in the record. The court itself acknowledged it was not the most straightforward reading and that adopting it would

mean viewing the evidence in Simmons's favor. Furthermore, no significant inference is needed to connect the statements to the termination. Simmons says it fired Evans because her performance fell short of expectations, and its decisionmaker said those expectations were higher for black employees. Therefore, summary judgment should have been denied based on this evidence.

The district court also erred in holding that Evans failed to make out a prima facie case through circumstantial evidence. Simmons conceded every element except similarly situated comparators. Evans identified two: Peyton McArthur and Cal Overman, white men on the same team who reported to the same supervisor. The court rejected them because Evans held a more senior title and was paid more. Its analysis was too rigid, and it would leave Evans, an employee in a unique position on her team, outside the protection of the anti-discrimination laws altogether. More importantly, Evans's seniority cannot explain the differences in treatment she showed.

The court's premise was that an employer may reasonably expect more of a senior employee. Grey's own testimony contradicts that premise. He did <u>not</u> tell Evans she faced greater scrutiny because of her rank. He told her she faced it <u>because of her race</u>. The district court failed to consider that evidence in making its determination of the prima facie case. A jury could reasonably conclude that Evans's

comparators had no "performance issues" only because they were measured against a lower standard.

Finally, the record contains ample evidence from which a jury could reject Simmons's stated reason as pretext. The performance criticisms were subjective and largely uncorroborated. Grey could identify nothing beyond minor typographical errors, and he could not define the "undesirable" businesses he faulted Evans for pursuing. Evans's coworkers saw no deficiencies in her communication or knowledge. Grey admitted that her loan production was satisfactory and played no role in the decision. Evans was never warned, coached, disciplined, or placed on an improvement plan before she was fired three months into the job. Grey pointed to her 90-day review as his "lightbulb moment," yet he had never conducted a 90-day review of any other employee. A reasonable jury could find that Simmons did not fire Evans for a concrete, documented performance failure, but because she did not meet the higher, race-based standard Grey had openly described. Consequently, the judgment should be reversed and the case remanded for trial.

## ARGUMENT

### I. Standard of review

This Court reviews a grant of summary judgment de novo. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment must be denied unless "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *DePas v. Stocker & Yale, Inc.*, 94 F. App'x 335, 338 (6th Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)); *see also Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017). In other words, if a reasonable jury could find in Evans's favor, summary judgment must be denied.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (noting that although there was reason to doubt some of the witness testimony, "the decision should have been left to the jury."). For this reason, when a court rules on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and <u>all justifiable inferences are to be drawn in his favor</u>." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513 (emphasis added); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570 (6th Cir. 2012) ("the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party."). Additionally, this Court "must consider 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' in the light most favorable to the party opposing the motion." *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994).

## II. Atextual Tests Cannot Supersede the Summary Judgment Standard

The Supreme Court has emphasized the dangers of an overly formulaic approach using atextual judge-made tests in employment discrimination cases. "This Court has repeatedly explained that the 'precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310-11, 145 S. Ct. 1540, 1546 (2025) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U. S. 506, 512, 122 S. Ct. 992, (2002) and *Furnco Constr. Corp. v. Waters*, 438 U. S. 567, 577, 98 S. Ct. 2943, (1978)).

Recently, the Supreme Court rejected an atextual rule requiring plaintiffs to prove "significant harm" for a Title VII violation, stating, "Title VII's text nowhere establishes that high bar." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350, 144 S. Ct. 967, 972 (2024). Then in *Ames*, again citing the broad text of Title VII, the Court rejected another special atextual rule that added a requirement for certain plaintiffs to satisfy on summary judgment. 605 U.S. 303, 145 S. Ct. 1540. In another recent case, Justices Thomas and Gorsuch dissented from a denial of certiorari, arguing that the judge-created doctrine of *McDonnell Douglas* has "spawned enormous confusion," "is underinclusive," and that the Court should clarify its role,

"if any." *Hittle v. City of Stockton, California*, 145 S. Ct. 759-760 (2025) (Thomas, J., dissenting from denial of certiorari).

Similarly, other circuits have expressed skepticism for atextual rules and the confusion they engender: "employment discrimination law has grown into a tangle of doctrines, tests, and claim types. We are doing our best to clear a path." *McCreight v. AuburnBank*, 117 F.4th 1322, 1326 (11th Cir. 2022). *See also Ismael v. Roundtree*, 161 F.4th 752, 759 (11th Cir. 2025) (stating that *McDonnell Douglas* "is not all it's cracked up to be."); *Massey v. Borough of Bergenfield*, 169 F.4th 188, 206 (3d Cir. 2026) (Bove, J., concurring) (noting that the *McDonnell Douglas* burden shifting "isolate[s] evidence into unnatural buckets that are difficult to differentiate and in tension with the text of Rule 56."); *Ayodeji Awe v. Harris Health Sys.*, 163 F.4th 969, 975 (5th Cir. 2026) (Elrod, J., concurring) ("I write to join the resounding chorus calling for a reconsideration of *McDonnell Douglas*…especially as applied at summary judgment."); *Hollis v. Morgan State Univ.*, 153 F.4th 369, 387-88 (4th Cir. 2025) (Quattlebaum, J., concurring) ("When someone says, 'watch this, hold my beer,' what follows rarely turns out well. The same is true when judges make up tests inconsistent with the statutory text that Congress enacted.").

Two circuits do not view *McDonnell Douglas* as the sole means to prove discrimination through circumstantial evidence, in order to ameliorate potential conflicts between the rigidity of that test and the Rule 56 standard. In the Eleventh

Circuit, courts also examine whether the plaintiff has demonstrated a "convincing mosaic of circumstantial evidence" from which a jury could find discrimination. *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022). "Aside from the *McDonnell Douglas* framework, an employee can still survive summary judgment by presenting 'circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Likewise, the Seventh Circuit has held:

> [The] legal standard…is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. <u>Evidence must be considered as a whole</u>, rather than asking whether any particular piece of evidence proves the case by itself-or whether just the "direct" evidence does so, or the "indirect" evidence. <u>Evidence is evidence</u>.

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (emphasis added).

This Court echoed the *Ortiz* court in *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016). There, the plaintiff was unable to satisfy *McDonnell Douglas* due to a lack of comparators and did not have "any traditional direct evidence, no smoking gun." *Id.* at 683. This Court still examined the plaintiff's circumstantial evidence but determined that it was not enough to convince a reasonable jury. *Id.* at 684. Furthermore, this Court also reiterated in another decision: "At the summary judgment stage, the ultimate question is whether [Plaintiff] presented evidence, direct or circumstantial, from which a reasonable jury

could logically infer that her race or gender were motivating factors in [Defendant's] decision to terminate her employment." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).

Both the direct evidence rule and the *McDonnell Douglas* analysis caused confusion in this case and should not—indeed, cannot—supplant Rule 56. The proper standard to be applied here is whether a reasonable jury could find that Evans was terminated due to race discrimination because Simmons imposed a higher performance standard on black employees. Based on the evidence presented, as the district court found, the answer is clearly yes.

## III. The District Court Erred in Granting Summary Judgment Despite Holding that a Reasonable Jury Could Find that Simmons Applied a Race-Based Performance Standard to Evans

This case turns on the evidence that the decisionmaker, Grey, told Evans that black employees were held to a different standard. Grey testified he told Evans that "sometimes, whether fair or not, we are held to a different standard," and Evans testified that Grey constantly reminded her she had to be "perfect" because she was the only black female in that role. (Grey Dep., R. 26-4 at Page ID # 151; Evans Dep., R. 26-9 at Page ID # 229). Grey made the decision to terminate Evans for failing to meet this higher standard, despite her aggressive client development and satisfactory loan production. (Gray Dep., R. 26-4 at Page ID ## 131, 137, 140, 147; Emails, R.

26-21 at Page ID ## 309-311; R. 26-22 at Page ID # 314). In analyzing this evidence, the district court erred in concluding that it was not direct evidence of discrimination.

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor[1] in the employer's actions." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* "Direct evidence thus requires that a racial motivation be "explicitly expressed." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). "Discriminatory remarks, however, are direct evidence of discrimination only when they come from a supervisor with at least a meaningful role in the decisionmaking process." *Bledsoe v. TVA Bd. of Dirs.*, 42 F.4th 568, 581

---

[1] Evans brings claims under Title VII, 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101. Under § 1981, the test is "but-for" causation rather than the motivating factor standard used for Title VII claims. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333, 140 S. Ct. 1009, 1014 (2020). Both parties below conceded that the differences between the two standards do not change the analysis in this case on summary judgment—Evans contends that she was subjected to a different performance standard than white employees were, while also being denied the same training and resources given to white employees. (Defendant's Brief, R. 26-37 at Page ID # 386 n.1; Plaintiff's Brief, R. 28 at Page ID # 429 n.3) Therefore, "but-for" her race, she would not have been terminated.

(6th Cir. 2022) (citation omitted); *see also Talley v. Bravo Pitino Rest*., 61 F.3d 1241, 1249 (6th Cir. 1995) (holding that racist comments by the owner and manager constituted direct evidence that the plaintiff's termination may have been racially motivated.).

The district court's finding is based on a misapprehension of this Court's prior case law. In *Kocak v. Cmty. Health Partners of Ohio, Inc.*, upon which the district court relied, this Court held that evidence is not direct evidence if "it admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact." 400 F.3d 466, 471 (6th Cir. 2005) (emphasis added). In that case, the plaintiff was told that she was not rehired because of scheduling difficulties due to her complicated pregnancy. However, the evidence showed that the plaintiff's scheduling difficulties predated her pregnancy. *Id.* at 468, 470. Thus, this Court held that a significant inference was needed to connect the reason for the adverse action to the plaintiff's pregnancy. *Id.* at 471.

In reaching the conclusion that Grey's statements were not direct evidence of discrimination, the district court found that Grey's statements could be construed as recognizing a racial double standard that was not shared by Grey or Simmons. (Order, R. 35 at Page ID ## 550-551). While Simmons would certainly urge such an interpretation, it is not plausible, as none of Grey's testimony supports this inference. Furthermore, the district court recognized that this inference not only would violate

the summary judgment standard of viewing evidence in the light most favorable to Evans, but it also would not be the most straightforward interpretation of the statements. (Order, R. 35 at Page ID # 551). As discussed above, atextual judge-made rules cannot violate the summary judgment standard—thus, the statement must be taken at face value rather than contorted to the benefit of Simmons. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

Furthermore, contrary to the district court's finding, no inference is needed: Grey, Evans's supervisor, repeatedly told her in the context of reviewing her work that, as the only black female in her role, Evans was expected to be "perfect" and was subject to a higher standard than white employees. (Grey Dep., R. 26-4 at Page ID # 151; Evans Dep., R. 26-9 at Page ID # 229). These statements are explicit expressions of a racial standard by a direct supervisor in connection with the employee's work performance. *Amini*, 440 F.3d at 359; *Bledsoe*, 42 F.4th at 581.

The district court further held that an inference was necessary to connect Grey's statements to Evans's termination. (Order, R. 35 at Page ID ## 551-552). However, Simmons contends that Grey terminated Evans because her performance did not meet its expectations. (Gray Dep., R. 26-4 at Page ID ## 131, 137, 140, 147; Emails, R. 26-21 at Page ID ## 309-311; R. 26-22 at Page ID # 314). In light of Grey's statements that the performance expectations for black employees were higher, and black employees were expected to be "perfect," no inference—and

certainly not a significant inference—is needed to connect the statements with the termination. (Gray Dep., R. 26-4 at Page ID # 131; Emails, R. 26-21 at Page ID ## 309-311; R. 26-22 at Page ID # 314). This connection is further supported by Grey's testimony that Evans aggressively sought out clients and that her loan production was satisfactory. (Grey Dep., R. 26-4 at Page ID ## 137, 140, 147).

Therefore, the facts of *Kocak* are distinguishable from the current case—the interpretation of Grey's statements as referring to some unknown third parties' performance standards, rather than the employer Simmons', is not a plausible interpretation. And no significant inference is needed to connect Grey's statements of a higher performance standard for black employees to Evans's termination for failing to meet that performance standard. Obviously, these facts differ from those in *Kocak*; there, the employer's refusal to rehire due to scheduling problems was not direct evidence of pregnancy discrimination because those scheduling problems predated her pregnancy. 400 F.3d at 471. Consequently, the district court's conclusion that it was constrained by the holding of *Kocak* from properly applying the summary judgment standard here was error.

The discriminatory remarks were made by the decisionmaker that a higher performance standard was expected for black employees, and Evans was fired because her performance did not meet that standard. These remarks are thus direct evidence. *Ondricko*, 689 F.3d at 649; *Amini*, 440 F.3d at 359. As the district court

held, a reasonable jury could find based on this evidence that Simmons's termination of Evans was due to racial discrimination. Consequently, the district court erred in granting summary judgment, and its order should be reversed.

## IV. The District Court Erred by Holding that Evans Failed to Establish through Circumstantial Evidence that Simmons Discriminated Against Her on the Basis of Her Race

Under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817 (1973), a plaintiff can prove a prima facie case of discriminatory discharge through circumstantial evidence by showing that she: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was treated less favorably than similarly situated non-protected employees. *Talley*, 61 F.3d at 1246. Simmons conceded below that Evans has established the first three elements of her prima facie case, contending only that she has not identified similarly situated comparators. (Defendant's Brief in Support, R. 26-37 at Page ID ## 387-389).

### A. Evans Identified Comparators Who Were Similarly Situated in All Relevant Aspects

Evans produced two similarly situated comparators, McArthur and Overman, two white men that were on her team and also supervised by Grey. In finding that these employees were not proper comparators to Evans, the district court erred by again undertaking an overly rigid analysis. *See Ames*, 605 U.S. at 310-11, 145 S. Ct.

at 1546. Moreover, the court failed to consider Grey's statements when making this finding.

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981). This Court has repeatedly rejected the argument that an employee must present an absolutely identical comparator, noting that such a requirement would make it impossible for employees in unique positions to establish a prima facie case. Some of the factors to be examined are whether the employees "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jackson v. Fedex Corp. Servs.*, 518 F.3d 388, 393 (6th Cir. 2008). However, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005); *see also Tennial v. UPS*, 840 F.3d 292, 304 (6th Cir. 2016) (holding that courts must "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee based on the facts of the case.").

In *Jackson*, this Court reversed a district court decision that members within the plaintiff's workgroup were not similarly situated because the plaintiff "held a

unique position." 518 F.3d at 396-97. "The district court's narrow definition of similarly situated effectively removed [Plaintiff] from the protective reach of the anti-discrimination laws." *Id.* at 397. Similarly, in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-353 (6th Cir. 1998), this Court reversed the district court's holding that the two comparators—who were in related human resources positions but not did not perform the same functions as the plaintiff—were not similarly situated. This Court reasoned that differences in job activities "do not automatically constitute a meaningful distinction." *Id.* at 353. "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather, … the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Id.* at 352 (citation omitted). Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.*

Here, the district court's analysis was too rigid and the focus too narrow. The comparator inquiry asks whether employees are similar in relevant respects. *Ercegovich*, 154 F.3d at 353. First, like the plaintiff in *Jackson*, Evans had a unique position as the only Business Banker III on Grey's team. The district court's finding would mean that Evans would be removed from the protections of anti-

discrimination laws. *Jackson*, 518 F.3d at 397. Furthermore, Simmons did not contend that the job duties of Evans, McArthur, and Overman were different, merely that Evans had more experience and was a larger book of business. (Defendant's Brief in Support, R. 26-37 at Page ID # 388). Evans presented evidence that, from the moment she was hired by Simmons, she received differential treatment in training, system access, fee splitting, and different lending standards. (Evans Decl., R. 30 at Page ID ## 516-517; Evans Dep., R. 26-9 at Page ID # 227; Grey Dep., R. 26-4 at Page ID # 139). None of these differences can be explained by Evans's higher job status—if anything, she should have received system access and training sooner due to her seniority. Likewise, the requirement that she split fees or the enforcement of different lending standards are also not explained by her status as a Business Banker III.

Simmons contended that McArthur and Overman were not comparators because they did not have the same performance issues as Evans. (Defendant's Brief in Support, R. 26-37 at Page ID # 389). But Grey repeatedly told Evans that her performance was held to a higher standard because she was black, and she thus had to be "perfect." (Grey Dep., R. 26-4 at Page ID # 151; Evans Dep., R. 26-9 at Page ID # 229). A reasonable jury could conclude that McArthur and Overman did not have performance issues because they were held to a lower standard than Evans because they are white.

The district court's holding that McArthur and Overman were not valid comparators is based on its reasoning that "[a]n employer may expect more of a more experienced, senior employee with a different rank and to whom more remuneration is given, resulting in different treatment based on those higher expectations." (Order, R. 35 at Page ID # 553). However, this reasoning <u>is directly contradicted by Grey's statements</u>. Grey did <u>not</u> tell Evans that she was subjected to more intense scrutiny due to her position as a Business Banker III or due to her seniority. Instead, Grey explicitly told Evans, on multiple occasions, that she was expected to be "perfect" and was held to a higher standard than other employees <u>because of her race</u>. (Grey Dep., R. 26-4 at Page ID # 151; Evans Dep., R. 26-9 at Page ID # 229). The district court erred in failing to consider Grey's statements in evaluating whether Evans satisfied the third element of her prima facie case, identifying similarly situated comparators. Based on the evidence, a reasonable jury could find that Simmons discriminated against Evans because of her race. Accordingly, the district court's decision should be reversed.

### B. Evans Demonstrated that Simmons's Articulated Reason Was Pretext

Because the district court found that Evans did not establish a prima facie case, it did not reach the issue of pretext. Simmons's articulated reason for the termination was that Evans lacked the knowledge and skill for the Business Banker

III role. (Defendant's Brief in Support, R. 26-37 at Page ID # 548). But Evans presented evidence from which a jury could reject that explanation.

"[I]n order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). "If the employer is unable to produce such evidence to support its employment action, then the 'honest belief' rule does not apply." *Id.* "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* The honest belief doctrine does not apply when an employer blindly follows the recommendation of a supervisor to terminate an employee without any supporting evidence or investigation. *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 654 (6th Cir. 2015).

Simmons's asserted reasons were based on subjective assessments. Grey's criticism of "undesirable" business was subjective because he could not clearly define the term, and Simmons could not identify or produce a policy defining it. (Evans Decl., R. 30 at Page ID ## 516-517; Grey Dep., R. 26-4 at Page ID # 139). Evans's education and experience also contradicted Simmons's assertion that she lacked knowledge. Furthermore, Simmons also failed to produce examples

supporting the claimed communication deficiencies other than a few minor typographical errors in internal emails, and other witnesses did not corroborate those criticisms. (Gray Dep., R. 26-4 at Page ID # 131; Emails, R. 26-21 at Page ID ## 309-311; R. 26-22 at Page ID # 314; Cook Dep., R. 26-7 at Page ID # 199; Overman Dep., R. 26-5 at Page ID # 170). Evans was selected to give a presentation at a Small Business Forum: her coworkers testified that her performance was "fine," that she "did a good job," that she "gave a great presentation," and she was complimented by Simmons's management. (Overman Dep., R. 26-5 at Page ID # 169; Cook Dep., R. 26-7 at Page ID # 199; Evans Decl., R. 30 at Page ID # 518).

In contrast, Evans performed well by objective measures. Grey admitted that Evans was aggressive in seeking clients and that her loan production was satisfactory and played no part in her termination. (Grey Dep., R. 26-4 at Page ID ## 137, 140, 147). Furthermore, the termination process itself also supports pretext. Evans was never told her job was in jeopardy, never placed on a performance improvement plan, never given any formal discipline, and never even received informal coaching prior to her termination. (Evans Dep., R. 26-9 at Page ID # 238). Grey testified that there was no particular event that contributed to the termination, that issues were "ongoing," and that the 90-day review was his "lightbulb moment." But Grey had never performed a 90-day review on any other employee before Evans. (Grey Dep., R. 26-4 at Page ID # 154).

Based on all of this evidence, a reasonable jury could find that Simmons did not terminate Evans because of a concrete, documented performance failure. Instead, a jury could conclude that Simmons terminated her because Grey applied the race-based "perfect" standard he had repeatedly articulated. Thus, because a reasonable jury could find that Simmons terminated Evans because of her race, the district court's grant of summary judgment should be reversed.

## CONCLUSION

For these reasons, Plaintiff-Appellant Laquindolyn "Lou" Evans respectfully requests that this Court reverse the district court's order granting summary judgment, vacate the judgment dismissing the case with prejudice, and remand for trial.

Respectfully submitted,

*/s/ Alan G. Crone*
Alan G. Crone, TN Bar No. 014285

**BARRETT & FARAHANY**
88 Union Avenue, 4th Floor
Memphis, Tennessee 38103
(901) 737-7740
acrone@justiceatwork.com
*Counsel for Plaintiff-Appellant*
*Laquindolyn "Lou" Evans*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 7,130 words.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

**BARRETT & FARAHANY**

*s/ Alan G. Crone*
Alan G. Crone
TN Bar No. 014285
acrone@justiceatwork.com

## CERTIFICATE OF SERVICE

I certify that on November 2, 2026, I electronically filed the foregoing Brief of Plaintiff-Appellant Laquindolyn "Lou" Evans with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

**BARRETT & FARAHANY**
*s/ Alan G. Crone*
Alan G. Crone
TN Bar No. 014285
acrone@justiceatwork.com

## ADDENDUM DESIGNATION

Pursuant to Sixth Circuit Rule 28, Plaintiff-Appellant designates the following relevant district court documents:

1. Complaint, R. 1, Page ID ## 1-22
2. Defendant's Motion for Summary Judgment, R. 26, Page ID ## 98-101
3. Exhibits to Defendant's Motion for Summary Judgment, R. 26-1 through R. 26-36, Page ID ## 102-381
4. Defendant's Brief in Support, R. 26-37, Page ID ## 382-394
5. Defendant's Statement of Undisputed Material Facts, R. 26-38, Page ID ## 395-418
6. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, R. 28, Page ID ## 421-440
7. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, R. 28-1, Page ID ## 441-485
8. Plaintiff's Statement of Additional Material Facts, R. 28-2, Page ID ## 486-491
9. Plaintiff's Exhibits, R. 28-3 through R. 28-8 at Page ID ## 492-510
10. Plaintiff's Exhibit to Declaration, R. 29 at Page ID ## 511-513
11. Plaintiff's Declaration, R. 30 at Page ID ## 514-519

12. Defendant's Reply in Support of Motion for Summary Judgment, R. 33, Page ID ## 524-532

13. Defendant's Responses to Plaintiff's Statement of Additional Material Facts, R. 34, Page ID ## 533-546

14. Order Granting Summary Judgment, R. 35, Page ID ## 547-554

15. Judgment, R. 36, Page ID # 555

16. Notice of Appeal, R. 38, Page ID ## 570-571